UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YUCHEN WANG,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | Case No. 5:26-cv-05876-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Yuchen Wang ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the Petition ("Answer" at Dkt. 7), and Petitioner replied ("Reply" at Dkt. 8). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 9.)

The Petition is granted. Respondents are directed to immediately release Petitioner from custody and are enjoined from re-detaining him without providing him with a pre-deprivation hearing.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Petitioner's Entry and Status in the U.S. (Aug. 2025-Oct. 2026).

Petitioner was born in China in 2006. (Pet. at 5, ¶ 16.) He was admitted to the U.S. on an F-1 student visa on August 25, 2025 and attended university classes in Rowland Heights, California. (Pet. at 5-6, ¶ 17.)

Petitioner alleges that he was authorized to remain through August 24, 2026. (Pet. at 6, ¶ 19.) However, DHS records reflect that, on May 4, 2026, Petitioner's "F1 status was terminated due to otherwise failing to maintain status—poor attendance." (Answer Ex. A / Dkt. 7-1 at 4 (DHS Form I-213).) It is unclear whether Petitioner was notified of this termination before his current detention began. (Cf. Reply at 4 ("Petitioner does not ask the Court to resolve any dispute about his student status.").)

On August 18, 2026, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with USCIS, including a request for protection under the Convention Against Torture ("CAT"). (Pet. at 6, ¶ 19; Pet. Ex. B / Dkt. 1-2 (the I-589).) Petitioner argues this application was timely under 8 U.S.C. § 1158(a)(2)(B), regardless of whether his student visa had been terminated, because it was filed less than a year after his arrival in the U.S. (Pet. at 6, ¶ 19; Reply at 4.)[1] That asylum application remains pending. (Pet. at 6, ¶ 19; Answer Ex. A / Dkt. 7-1 at 4 (DHS Form I-213).)

---

[1] That statute provides, "Any alien who is physically present in the United States or who arrives in the United States … may apply for asylum," as long as "the alien demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(1), (a)(2)(B); see also 8 C.F.R. § 208.4(a)(2) (describing how the deadline is calculated). Additionally, a late asylum application "may be considered" if "the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D).

Petitioner has no criminal history. (Pet. at 6, ¶ 21; id. at 11-13, ¶¶ 40, 46-47, 51; see also Answer Ex. A / Dkt. 7-1 (DHS Form I-213, listing no criminal history).)

**B. Detention by ICE (Oct. 2, 2026).**

USCIS instructed Petitioner to appear for a biometrics appointment related to his asylum application on October 2, 2026. (Pet. at 6, ¶ 22; Pet. Ex. C / Dkt. 1-3 at 2 (the USCIS notice).) Petitioner appeared as directed and was detained by ICE. (Pet. at 7, ¶ 24; Answer Ex. A / Dkt. 7-1 at 3-4.)

None of the DHS records before this Court explain why ICE decided to detain Petitioner. He was not served with a Form I-286, a notice of custody determination form. (Pet. at 7, ¶ 28.) The Form I-213 simply states, "[Petitioner] will remain in ERO custody pending the results of his immigration proceedings." (Answer Ex. A / Dkt. 7-1 at 4.)

Petitioner was served with a notice to appear ("NTA") alleging removability under § 237(a)(1)(C)(i) of the Immigration and Nationality Act ("INA"), i.e. for "failing to maintain the nonimmigration status in which [he] was admitted … or to comply with the conditions of any such status…." 8 U.S.C. § 1227(a)(1)(C)(i); (Answer Ex. A / Dkt. 7-1 at 4 (DHS Form I-213); see also Reply at 4 ("The termination of [Petitioner's student visa] status is the basis for the § 1227(a)(1)(C)(i) charge….").) His removal proceedings remain pending with a master hearing currently scheduled for December 9, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 242-524-206 (China), last accessed Nov. 10, 2026). He remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 242-524-206 (China), last accessed Nov. 10, 2026).

**C. Habeas Proceedings.**

Petitioner filed the present Petition on October 5, 2026. (Dkt. 1.) The

Petition raises the following claims:

Ground 1: Petitioner's detention violates the INA because Respondents have illegally categorized him as an applicant for admission who is ineligible for a bond hearing under 8 U.S.C. § 1225(b)(2)(A), when he is actually entitled to a bond hearing under 8 U.S.C. § 1226(a). (Pet. at 11-12, ¶¶ 41-44.)

Ground 2: Respondents violated Petitioner's Fifth Amendment procedural due process rights. (Pet. at 12-13, ¶¶ 45-48.)

Ground 3: Respondents violated Petitioner's Fifth Amendment substantive due process rights because he is not a danger to the community or a flight risk, meaning his detention is not reasonably related to any legitimate purpose. (Pet. at 13-14, ¶¶ 49-51.)

The Petition seeks a (1) declaration that Petitioner is not subject to detention under 8 U.S.C. § 1225(b)(2)(A), and (2) either immediate release from custody or a bond hearing. (Pet. at 14-15.)

Respondents answered the Petition on October 13, 2026. (Dkt. 7.) They admit that Petitioner "appears to be entitled to request and receive an initial bond hearing pursuant to" Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) ("Bostock"). (Answer at 2.) They argue, "It is unclear from the Petition whether Petitioner has requested a bond hearing in Immigration Court," and argue that if he has not, he "has not yet properly exhausted his available administrative remedies…." (Id. at 3.) They argue that he "is properly detained pending such potential bond proceedings because this is [his] first detention; he was not previously released from immigration detention or paroled." (Id. at 3.)

Petitioner replied on October 16, 2026. (Dkt. 8.) He argues, "Respondents' Answer concedes the central point of the Petition," i.e., that he is entitled to a bond hearing. (Id. at 2.) He argues exhaustion would be futile, because the immigration courts will not adjudicate Petitioner's constitutional claims, and his current detention is causing him irreparable injury. (Id. at 5-6.) He argues release is

appropriate because "Respondents had a full opportunity to identify any reason to detain Petitioner and identified none," and "ICE detained him without the individualized custody determination its regulations require…." (Id. at 7.)

## III. DISCUSSION

### A. Petitioner is Entitled to Relief on Ground 1, Because Respondents Concede He is Not Properly Detained under § 1225(b)(2)(A).

The Ninth Circuit recently held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Bostock, 183 F.4th at 1165; see also Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084, 1094, 1095 (C.D. Cal. 2025) (certifying "Bond Eligible Class" of noncitizens who entered without inspection, were not apprehended upon arrival, and are not subject to detention under § 1226(c), § 1225(b)(1), or § 1231 when DHS makes an initial custody determination), appeal filed, No. 25-7958 (9th Cir. Dec. 19, 2025).

Respondents admit that, pursuant to Bostock, Petitioner is not properly detained under § 1225(b)(2)(A). (Answer at 2-3.) Accordingly, the Court will grant Ground 1 of the Petition and issue a declaration that Petitioner is not subject to detention under this provision.

### B. Petitioner is Entitled to Relief on Ground 2, Because Respondents Violated His Procedural Due Process Rights By Failing to Provide Him With a Pre-Deprivation Hearing.

#### 1. Parties' Arguments.

Petitioner argues that he "has a fundamental liberty interest in freedom from physical confinement" and that "Respondents' detention of Petitioner without any individualized custody hearing" violated his due process rights. (Pet. at 12-13, ¶¶ 46, 48.) Petitioner also argues that Respondents should bear the burden of proof at any bond hearing ordered. (Id. at 12-13, ¶ 47.)

Respondents admit that Petitioner is entitled to a post-deprivation bond

hearing under Bostock, as discussed above, but they argue that "Petitioner is properly detained pending such potential bond proceedings because this is Petitioner's first detention; he was not previously released from immigration detention or paroled." (Answer at 3.)

**2. Legal Standards.**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**3. Analysis**

a. Private interest affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690 (2001). "Even individuals who face

significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

To the extent Respondents argue that Petitioner lacks a liberty interest in release because he was not previously detained by ICE, this appears to be an attempt to distinguish cases finding that, once a noncitizen is released on parole, this creates a liberty interest in continued release. See, e.g., Pinchi, 792 F. Supp. 3d at 1032-33; Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025).

This is not the only situation in which courts have found that noncitizens have a protected liberty interest in release from custody, however. District courts generally reason that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release." Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2, 2026 U.S. Dist. LEXIS 62410, at *4 (E.D. Cal. Mar. 24, 2026) (emphasis added). Many courts have found this includes noncitizens who have overstayed their visa. Courts often cite evidence that the government had been aware of the noncitizen's continued presence in the U.S. and yet had taken no action to detain the noncitizen for months or years after the visa expired. See, e.g., Huang v. Blanche, No. 2:26-cv-02157, 2026 WL 2271901, at *1, 8, 2026 U.S. Dist. LEXIS 178076 (W.D. Wash. July 15, 2026) (finding liberty interest where the noncitizen overstayed a tourist visa and applied for asylum, but was not arrested by ICE until about 4 years later); Tello Vazquez v. Mullin, No. 26-cv-2039-KKE, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a

flight risk or a danger to the community."); Benipal v. Rokosky, No. 26-cv-01306, 2026 WL 1355010, at *1, 10, 2026 U.S. Dist. LEXIS 108085 (D. Ariz. Apr. 24, 2026) (finding noncitizen who had overstayed his visa had a liberty interest in release where he had not been detained for years after his visa has expired, even though in that time he had been issued a deficient notice to appear, been granted permission to work in the U.S., and filed an application to register permanent residence or adjust status); Kalkan v. Chestnut, No. 26-cv-02028, 2026 WL 788112, at *1, 2026 U.S. Dist. LEXIS 59347 (E.D. Cal. Mar. 20, 2026) ("[T]he petitioner entered the United States on a nonimmigrant visa and subsequently applied for asylum such that immigration officials were aware of the petitioner's presence, initially approved of that presence, and when the status expired, did not promptly detain the petitioner based on that expiration of status."); Kharitonova v. Albarran, No. 26-cv-01362, 2026 WL 531441, at *2, 2026 U.S. Dist. LEXIS 39213 (N.D. Cal. Feb. 25, 2026) ("Petitioner has a vested liberty interest in remaining free from detention as she has lived for the last 13 years. … The government's decision not to detain Petitioner 'when it processed her asylum application, took her biometrics, referred her asylum case to EOIR, and advised her to appear for multiple hearings over a period of years,' likewise gave rise to 'a liberty interest on Petitioner's part that she would remain free unless she violated her conditions of release.' … The government's insistence Petitioner lacks a liberty interest because it never before sought to detain her is specious. … Although the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained.").[2]

---

[2] But see, e.g., Li v. Larose, No. 26-cv-1614-JLS-MMP, 2026 WL 948362, at *1-2, 2026 U.S. Dist. LEXIS 76610, at *5-6 (S.D. Cal. Apr. 8, 2026) ("Respondents … argue that any 're-detention' due process argument—i.e., that Petitioner was re-detained without notice or evidence of changed circumstances—fails because Petitioner has never been previously detained or released. … The

Here, Petitioner entered the U.S. on a student visa in August 25, 2025 and was originally authorized to remain through August 24, 2026. During that time, he applied for asylum, which application remains pending. Although Respondents now contend that the visa was terminated in May 2026 due to poor class attendance, they took no action to detain Petitioner for the next five months. Petitioner therefore obtained a liberty interest in release that is protected by the Fifth Amendment Due Process Clause.

b. Risk of erroneous deprivation and value of additional safeguards.

The facts of this case amply demonstrate the value of a pre-deprivation hearing. Respondents have never explained—either to Petitioner at the time of his ICE arrest or in the present proceedings—why he needs to be detained while awaiting adjudication of his asylum application. There is no evidence in the record that Petitioner has committed any crimes or that he has ever absconded from immigration proceedings. Indeed, he voluntarily appeared for the biometrics appointment at which he was detained. Petitioner was not served with a Form I-286, notice of custody determination form, which would have reflected that the arresting officers had performed some kind of individualized analysis. See generally 8 C.F.R. § 236.1(g)(1) ("At the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, an immigration official may issue a Form I-286, Notice of Custody Determination.").

---

Court agrees with Respondents. … Petitioner entered the United States on a B2 visitor's visa which expired in August of 2020…. If Petitioner was previously detained and released on parole, a pre-deprivation consideration of his individualized circumstances would be required. … However, here, Petitioner has never been detained, and thus, there has been no initial determination by DHS that Petitioner poses no danger to the community and is not a flight risk.").

A pre-deprivation hearing would require the government to produce its evidence of flight risk or danger to the community, and give Petitioner an opportunity to challenge that evidence. Conducting the hearing before Petitioner is detained and while he is out of custody ensures Petitioner has better access to counsel and evidence about flight risk and danger. This is a significant procedural safeguard.

c. Countervailing government interest.

There is no meaningful countervailing interest that supports detaining someone like Petitioner, who Respondents admit is subject to detention only under § 1226(a)—not one of the mandatory detention provisions—and where there has been no individualized finding that Petitioner is either a danger to the community or a flight risk. Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner with a pre-deprivation hearing prior to any detention.

d. Appropriate remedy is release, not post-deprivation hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL

712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").

Indeed, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

### C. Administrative Exhaustion is Waived.

#### 1. Legal Standard.

For habeas petitions properly filed under 28 U.S.C. § 2241, like the present Petition, the exhaustion requirement is prudential, rather than jurisdictional. Courts deciding whether to require prudential exhaustion generally consider what are known as the Puga factors, which consider whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to

> allow the agency to correct its own mistakes and to preclude the need for judicial review.

Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007)).

"Nonetheless, even if the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

"Exhaustion is futile where continuing administrative proceedings 'would clearly be of no avail,' Fones4All Corp. v. FCC, 550 F.3d 811, 818 (9th Cir. 2008), where there is 'certainty of an adverse decision,' Agua Caliente Tribe of Cupeño Indians of Pala Reservation v. Sweeney, 932 F.3d 1207, 1219 (9th Cir. 2019), or where there is 'undisputed evidence of administrative bias,' White Mountain [Apache Tribe v. Hodel], 840 F.2d [675,] 677 [9th Cir. 1988]." Winnemucca Indian Colony v. U.S. ex rel. Dep't of the Interior, 819 F. App'x 480, 482 (9th Cir. 2020). However, the exhaustion requirement is only to be waived in "exceptional circumstances," and Petitioner bears the burden to demonstrate futility. Id. (quoting White Mountain, 840 F.3d at 677); see also Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011).

**2. Analysis.**

Requiring Petitioner to exhaust his due process claim in immigration court is unnecessary and futile, because neither the INA nor DHS regulations require such a hearing. It would also cause irreparable injury by prolonging his detention. See, e.g., Mendoza v. Noem, No. 25-cv-3227-MWF-AGR, 2026 WL 923311, at *5, 2026 U.S. Dist. LEXIS 75624 (C.D. Cal. Apr. 1, 2026) ("[T]he Government argued that the BIA would be in a better position to review the reasoning behind

the IJ's decision. But it is not clear to the Court what information the BIA would have at its disposal beyond what has been provided on this Application. ... As other courts have recognized under similar circumstances, BIA appeals can take months before resolution. In the meantime Petitioner would be subject to detention that is almost certainly unlawful, and thus would suffer irreparable injury."); Miri v. Bondi, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *11, 2026 U.S. Dist. LEXIS 46944 (C.D. Cal. Mar. 5, 2026) ("[R]equiring Miri to go before the [BIA] would prolong his unconstitutional detention, thereby causing irreparable injury. ... Taken together, the Court, in weighing the Puga factors, finds that Miri was not required to exhaust administrative remedies given the questions of law at issue. This decision is consistent with Hernandez, where the Ninth Circuit waived the exhaustion requirement given that the question before the Court involved a legal challenge.").

Accordingly, the Court waives the exhaustion of administrative remedies requirement.

**D. Ground 3 is Dismissed as Moot.**

Because granting Grounds 1 and 2 grants all of the relief requested in the Petition, there is no further relief the Court can grant on Ground 3. This claim will therefore be dismissed as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Grounds 1 and 2 of the Petition are granted, and Ground 3 is dismissed as moot.
2. Respondents shall **immediately release** Yuchen Wang (A# 242-524-206) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.[3]

DATED: November 10, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[3] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).